JANET A. LAWSON #107321
3639 East Harbor Blvd. #109
Ventura, CA 93001
(805) 985-1147
(805)658-2302 (FAX)
jlawsonlawyer@gmail.com

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| RICHARD PAUL ANDERSON,<br><br>Plaintiff<br><br>vs<br><br><br><br>OCWEN LOAN SERVICING, LLC, and<br>HSBC BANK USA, NATIONAL<br>ASSOCIATION<br><br><br>Defendants. | Case No.<br><br>COMPLAINT FOR<br>VIOLATIONS OF THE ROSENTHAL<br>FAIR DEBT COLLECTION PRACTICES<br>ACT, Cal. Civ. Code 1788 *et seq.*, FAIR<br>DEBT COLLECTION PRACTICES ACT<br>15 U.S.C. § 1692 et seq.<br>NEGLIGENCE, NEGLIGENT<br>TRAINING AND SUPERVISION;<br>UNFAIR COMPETITION Cal. B & P<br>17200, et seq., and INVASION OF<br>PRIVACY BY INTRUSION UPON<br>SECLUSION<br><br>DEMAND FOR JURY TRIAL |

**I**
**JURISDICTION AND VENUE**

1. Jurisdiction of this Court arises under 28 U.S.C. § 1332, 15 U.S.C. § 1692(k)(d) and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367 for pendant state law claims. Plaintiff is a citizen of the State of California. Defendant Ocwen Loan Servicing, LLC ("Ocwen") is organized under the laws of the State of Deleware and it is authorized to do business in California. The amount in controversy exceeds $75,000.00

Complaint                                                                                                                     -1-

exclusive of interest and costs.

2. Defendant HSBC Bank USA, National Association ("HSBC") is a national bank chartered by and supervised by the Office of the Comptroller of the Currency.

3. Venue for the within action is properly within the jurisdiction of this Court pursuant to 28 U.S.C. § 1391(b) in that Defendants Ocwen and HSBC at all times herein were conducting business within this judicial district and on the further grounds that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## II

## PARTIES

4. Plaintiff Richard Paul Anderson, (herein after "Anderson") is a natural person and a "debtor" as that term is defined by California Civil Code § 1788.2(h) and by 16 U.S.C. § 1692a(6).

5. Plaintiff is informed and believes, and thereon alleges, that Defendants Ocwen and HSBC are "debt collectors" as the term is defined by California Civil Code § 1788.2(c).

6. Plaintiff is informed and believes, and thereon alleges that Defendant Ocwen is a debt collector as defined by 16 U.S.C. § 1692(a)(6).

7. At all times material herein, each defendant was the agent, servant and employee of each defendant, and acting within the purpose, scope and course of said agency, service and employment, with the express and/or implied knowledge, permission and consent of the remaining defendants, and each of them, and each defendant ratified and approved the acts of the other defendants, except as otherwise noted.

## III

## FACTUAL ALLEGATIONS

8. Plaintiff obtained a home loan from DHI Mortgage Company for the purpose of purchasing a single family home on November 17, 2006 . Anderson has continuously occupied

Complaint -2-

the home since that date. At some point and time the servicing rights were assigned to Indymac Mortgage Service.

9. Up until October 16, 2013 Anderson made payments as directed to Indymac Mortgage Servicer ("Indymac"). In November 2013 he was informed that his payments now needed to go to Ocwen and that he had to make up a "missing payment" that had been sent to Indymac for the November 2013 payment. Anderson then made two payments in December 2013. On December 12, 2013 Ocwen cashed his check for $8,372.55. Anderson never got that check back in his bank statement. His bank statement however shows that it cleared. That same bank statements show a second check, for the same about that cleared on December 30, 2013. At this point in time Anderson is *ahead* two payments.

10. Thereafter Ocwen accepted Andersen's payments made on 1/10/2014, 2/15/2014, 3/10/2014, 4/10/2014, 5/15/2014, 6/13/2014, 7/21/2014, 8/10/2014/1/2014, 10/10/2014 and 11/13/2014. At all times Anderson remained two payments *ahead as of December 2013*.

11. In January 2015 Anderson received a letter from Ocwen dated January 9, 2015 telling him he has not paid from October 1, 2014 to January 1, 2015. Anderson responds and attaches copies of the checks that have cleared:

#1618 cashed on 7/21/2014

#1571 cashed on 8/18/2014

#1581 cashed on 9/19/2014

#1588 cashed on 10/14/2014

#1631 cashed on 11/17/2014

#1640 cashed (dated 12/14/2014)

#1643 cashed (dated 12/26/2014).

12. These checks did in fact clear because Anderson's bank statements show that they cleared. His letter to Ocwen does not resolve the problem. Ocwen sends him a letter dated

Complaint                                                                                                                        -3-

1/17/2015 advising him he has not paid since August 2014. On January 29, 2015 he receives a letter thanking him for the copies of the checks and insisting he is delinquent since August 2014. Anderson asks for a loan history and on January 30, 2015 Ocwen agrees to send him one.

13. On February 25, 2015 his January 2015 payment is returned to him. After this date his payments are either returned uncashed or cashed and refunded back to him. On February 25, 2015 Anderson is sent another letter "reminding him" he is delinquent since August 1, 2014. His March 2015 statement shows him owing $39,131.39.

14. In a letter dated March 20, 2015 the accounting from Ocwen arrives. It is incomplete. The first entry labeled "beginning Balance" which shows $18,007.66 in "suspense". It does not go far enough back to see where Ocwen contends the first missed payment occurred. It is not even in chronological order. Payments from March 21, 2014 to July 21, 2014 are applied to "suspense". Then there is a gap in the records and the suspense account goes down to $7.61. With no explanation the payment for October 1, 10, 2013 shows the suspense balance jumping up to $23,245.05. Some interest is applied, some of the suspense is applied. Significantly, there are no late charges until the "Ending Balance" with an undocumented number of $1,245.83 and other charges of $183.03 for certified mailing costs and property inspections. A the end point the suspense is $1,818.00.

15. The two extra payments he made are unaccounted for. One extra payment he sent in by mistake, the other he made on purpose because he wanted credit for his 2013 tax return.

16. On March 3, 2015 Anderson received a letter threatening foreclosure. Ocwen has now declared the entire loan all due and payable now.

17. In February 2014 Ocwen signed a consent judgement with the Consumer Financial Protection Bureau, 49 states, including California, and the District of Columbia requiring it to correct systemic problems with it's loan servicing activities.

18. Ocwen entered into a Consent Order on or about January 2015 with the California

Complaint -4-

"Commissioner of Business Oversight" requiring it to correct systemic problems with it servicing of mortgage loans.

19. Anderson alleges based on in formation and belief that HSBC was at all times relevant herein aware of the Consent Judgement and Consent Order.

## IV

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION ACT, Cal. Civ. Code 1788 et seq.

20. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

21. This is an action for damages brought by an individual against Ocwen and HSBC for violations of the California Rosenthal Fair Debt Collection Practices Act, Cal Civil Code Sections 1788 et seq., (hereinafter "RFDCPA")

22. Liability under the RFDCPA is not dependent on Ocwen's assignment of the collection account before there was a default.

23. At all times mentioned herein Ocwen was the agent of HSBC.

24. Ocwen violated Section 1788.10(e) of the RFDCPA by threatening to sell at foreclosure Anderson's residence when in fact it could not do because Anderson is current on his payments, except for the ones Ocwen wrongfully refused to accept.

25. Anderson tried diligently to point out to Ocwen that it had made a mistake in servicing his loan for over 6 months, all to no avail. At the same time Ocwen contended Anderson was in default, it admitted it had received his payments from July 21, 2014 to January 1, 2015. It has somehow failed to apply the December 2013 double payment to Anderson's account. It has wrongfully returned all of his payments made in calendar year 2015. It has charged his account late fees and miscellaneous fees when he was two payments ahead and then

Complaint -5-

them it failed to accept his payments.

26. The remedies under the RFDCPA entitle Plaintiff to damages. Such damages include, without limitation, resulting monetary losses, special damages, and damages for emotional distress which damages are in an amount to be proven at trial. Such damages also include attorneys fees and costs.

27. In addition, pursuant to Cal. Civ. Code sections 1788.30 and 1788.17 because Ocwen's violations of the RFDCPA were committed willingly and knowingly, Plaintiff is entitled to recover, in addition to actual damages, penalties of up to $1,000.00 as provided for in the act. Trying to straighten out his account with Ocwen has been a consumer's worst nightmare for Anderson.

## V

## SECOND CLAIM FOR RELIEF

### Violation of the FDCPA 15 U.S.C. 1992 et seq.

28. Anderson incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein, except any allegations that HSBC has any liability under the FDCPA

29. This is an action for damages brought by an individual against Ocwen for violations of the Fair Debt Collection Practices 15 U.S.C. 1692 et seq. (Hereinafter "FDCPA")

30. Ocwen violated Section 1692f(6)(A) of the FDCPA by threatening to sell at foreclosure Anderson's residence when in fact it could not do because Anderson current is on his payments, except for the ones Ocwen wrongfully refused to accept.

31. The remedies under the FDCPA entitle Plaintiff to damages. Such damages include, without limitation, resulting monetary losses, special damages, and damages for emotional distress which damages are in an amount to be proven at trial. Such damages also include attorneys fees and costs, 15 U.S.C. § 1692k.

32. Because Ocwen's violations of the FDCPA were committed willingly and

knowingly, Plaintiff is entitled to recover, in addition to actual damages, penalties of up to $1,000.00 as provided for in the act. Trying to straighten out his account with Ocwen has been a consumer's worst nightmare for Anderson.

## VI

## THIRD CLAIM FOR RELIEF

### Negligence

33. Anderson incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

34. Ocwen owes Anderson a specific duty to maintain an accurate loan history and apply his payments to the home mortgage loan account, 12 C.F.R. 1026.36(c).

35. Ocwen breached this duty by failing to maintain accurate records and by providing an incomplete loan history to Anderson on March 20, 2015. Ocwen failed to credit Anderson account for the December 11, 2013 payment in the amount of $8,372.55 which put him two payments ahead. Ocwen also failed to send Anderson an accurate loan history as required by law. The "beginning balance" shows $18,7.66 in suspense but does not show where the alleged failure to pay occurred. The RESPA response was therefore inaccurate and incomplete. It further failed to notify him on the 36th day of the first delinquency. It did not give Anderson a point of contact person as requited by Regulation X.

36. Ocwen furthermore failed to credit Anderson's account when the amount in the suspense account totaled one full payment within $50.00, 12 C.F.R. 1026.35(c)(1)(ii)(B).

37. As a direct and proximate result of defendants' negligence, Anderson has suffered fear, anxiety, and sleepless nights over the prospect of losing his home, especially since the entire balance has been declared "due" by Ocwen. His account has been unlawfully charged "late fees" and other miscellaneous fees. The failure to apply the payments to the account has created income problems for his 2014 tax return. The alleged "default" has been reported to the

Complaint                                                                                                          -7-

1. credit bureaus.

38. Ocwen actions as allege herein were the result of a callous and conscious disregard of the rights of Anderson to be free of abusive mortgage servicing activities.

39. Anderson alleges based on information and belief that HSBC was at all times herein mentioned aware of the consent order and the consent judgement and failed to insure that Ocwen complied with its obligations with respect to the servicing of his home mortgage loan.

40. Defendants acted with reckless, willful or callous disregard of Anderson's rights and with malice, fraud or oppression toward Anderson, thereby entitles Anderson to an award of punitive damages in accordance with proof at trial.

## VII

## FOURTH CLAIM FOR RELIEF

### Negligent Training and Supervision

41. Anderson incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

42. Ocwen negligently trained and supervised its employees and agents as to the performance of their job duties with respect to Anderson's home mortgage loan. As direct result of such negligent instruction and supervision the employees and/or agents while carrying out their job duties caused injury and damage to Anderson.

43. As a direct and proximate result of defendants unlawful conduct, Anderson has suffered damages in an amount to be determined at trial

44. Defendants acted with oppression, and/or malice, thereby entitling Anderson to punitive damages in an amount to be determined at trial. Defendant acted in a despicable manner and acted with a conscious disregard to the rights of Anderson.

//

//

Complaint -8-

## VIII

## FIFTH CLAIM FOR RELIEF

## UNFAIR COMPETITION

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

45. Anderson incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

46. California's Unfair Competition Law (the "ULC") defines unfair competition to include any "unlawful, unfair, or fraudulent" business practice, Cal Bus. & Prof. Code §§ 17200 *et seq.* Defendants conduct as alleged herein constitutes unfair competition under the ULC.

47. Ocwen engaged in "fraudulent" business practices under the ULC because it could not declare plaintiff's home mortgage loan "all due" and demand payment in full in June 2015.

48. Ocwen engaged in "unlawful" business practices under the UCL based on the violation of the Rosenthal Act, which incorporates by reference the federal Fair Debt Collection Practices Act as set forth in the First and Second Claim for Relief.

49. Ocwen engaged in "unfair" business practices under the UCL because they violated the laws and underlying legislative policies designed to protect consumers from abusive home loan servicing, as well as the Consent Order and Consent Judgement.

50. Plaintiff prays for judgement as permitted by statute.

## IX

## SIXTH CLAIM FOR RELIEF

### Invasion of Privacy By Intrusion Upon Seclusion

51. Anderson incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

52. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its finding;

Complaint -9-

> "Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy."

15 U.S.C § 1692(a).

53. Ocwen and/or its agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of Anderson, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invading Anderson's privacy by excessive use of the telephone.

54. Ocwen and its agents intentionally and/or negligently cause emotional harm to Anderson by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Anderson's right to privacy.

55. The conduct of Ocwen and its agents, in engaging in the above-described illegal collection conduct against Anderson, resulted in multiple intrusions and invasions of privacy against Anderson by this Defendant which occurred in a way that would be highly offensive to a reasonable person in Anderson's position.

56. As a result of such intrusions and invasions of privacy, Anderson is entitled to actual damages in an amount to be determined at trial.

57. Ocwen acted with oppression, fraud, and or malice, thereby entitling Anderson to punitive damages in an amount according to proof and a finder of fact at trial.

**WHEREFORE,** Plaintiff Richard Paul Anderson prays judgement against Ocwen and HSBC for actual damages, statutory damages, general damages, punitive damages, attorneys fees and costs as determined by the trier of fact and in accordance with the law.

Dated: July 7, 2015

_____
Janet A. Lawson,
Attorney for Plaintiff Richard Paul Anderson

Complaint -10-